| Fill in this information to identify the case: |
|---|

United States Bankruptcy Court for the:
_____Southern_____ District of _____New York_____
                                     (State)
Case number (*If known*): _____   Chapter 15

☐ Check if this is an
amended filing

<u>Official Form 401</u>
# Chapter 15 Petition for Recognition of a Foreign Proceeding        12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Casino, Guichard-Perrachon S.A. |

| | | |
|---|---|---|
| 2. | **Debtor's unique identifier** | **For non-individual debtors:** |

☐ Federal Employer Identification Number (EIN) ___ ___ – ___ ___ ___ ___ ___ ___ ___

☒ Other _____554 501 171_____ Describe identifier ___French RCS / SIREN Number___

**For individual debtors:**

☐ Social Security number: xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN): 9 xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

| | | |
|---|---|---|
| 3. | **Name of foreign representative(s)** | Alexis Ravalais |

| | | |
|---|---|---|
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | *Sauvegarde accélérée* (i.e., "accelerated safeguard") proceeding under the *Code de Commerce* (French Commercial Code) before the *Tribunal de Commerce de Paris* (Commercial Court of Paris) |

| | | |
|---|---|---|
| 5. | **Nature of the foreign proceeding** | *Check one*:<br>☒ Foreign main proceeding<br>☐ Foreign nonmain proceeding<br>☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding |

| | | |
|---|---|---|
| 6. | **Evidence of the foreign proceeding** | ☒ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.<br><br>☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.<br><br>☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached. |

| | | |
|---|---|---|
| 7. | **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** | ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)<br>☒ Yes |

| Debtor | Casino, Guichard-Perrachon S.A. | Case number (if known) _____ |
|---|---|---|
| | Name | |

---

**8.**     **Others entitled to notice**      Attach a list containing the names and addresses of:

       (i)     all persons or bodies authorized to administer foreign proceedings of the debtor,

       (ii)    all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

       (iii)   all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9.**     **Addresses**

**Country where the debtor has the center of its main interests:**

France

**Debtor's registered office:**

| 1 | Cours Antoine Guichard |
|---|---|
| Number | Street |

P.O. Box

| Saint Étienne | | 42000 |
|---|---|---|
| City | State/Province/Region | ZIP/Postal Code |

| France |
|---|
| Country |

**Individual debtor's habitual residence:**

| N/A | |
|---|---|
| Number | Street |

P.O. Box

| | | |
|---|---|---|
| City | State/Province/Region | ZIP/Postal Code |

| |
|---|
| Country |

**Address of foreign representative(s):**

| 134 | Boulevard Haussmann |
|---|---|
| Number | Street |

P.O. Box

| Paris | | 75008 |
|---|---|---|
| City | State/Province/Region | ZIP/Postal Code |

| France |
|---|
| Country |

---

**10.**    **Debtor's website** (URL)      www.groupe-casino.fr

---

**11.**    **Type of debtor**      *Check one*:

     ☒   Non-individual (check one):

         ☒   Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

         ☐   Partnership

         ☐   Other. Specify: _____

     ☐   Individual

---

| Debtor | Casino, Guichard-Perrachon S.A. | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**12. Why is venue proper in this district?**

*Check one:*

☒ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____         Alexis Ravalais
    Signature of foreign representative              Printed name

Executed on    February 15, 2024
               MM / DD / YYYY

✗ _____         _____
    Signature of foreign representative              Printed name

Executed on    _____
               MM / DD / YYYY

**14. Signature of attorney**

✗ _____         Date    February 15, 2024
    Signature of Attorney for foreign representative         MM / DD / YYYY

Matthew S. Barr / Kelly DiBlasi
Printed name

Weil, Gotshal & Manges LLP
Firm name

767 Fifth Avenue
Number        Street

| New York | New York | 10153 |
|---|---|---|
| City | State | ZIP Code |

| (212) 310-8000 | matt.barr@weil.com / kelly.diblasi@weil.com |
|---|---|
| Contact phone | Email address |

| 2800175 / 4342994 | New York |
|---|---|
| Bar number | State |

**<u>Exhibit A</u>**

**Certified Copy of Decision Commencing Foreign
Proceeding and Appointing Foreign Representative**



**REPUBLIQUE FRANCAISE**

**AU NOM DU PEUPLE FRANÇAIS**

**TRIBUNAL DE COMMERCE DE PARIS**

**2 EME CHAMBRE**

**JUGEMENT PRONONCE LE 25/10/2023**
**Par sa mise à disposition au greffe**

LRAR:
-SA CASINOGUICHARD-PERRACHON
Copies
- TPG
- Me Frédéric Abitbol
- Me Hélène Bourbouloux
- Me Aurélia Perdereau
- Me Marc Sénéchal
- Me Valérie Leloup-Thomas
- Me Bernard Corre
- Parquet

RG 2023059148
P202302888

SA CASINO, GUICHARD-PERRACHON (ci-après « CGP »), société anonyme dont le siège social est situé 1 cours Antoine Guichard à Saint-Etienne (42000), immatriculée au registre du commerce et des sociétés de Saint-Etienne sous le numéro 554 501 171.

**JUGEMENT D'OUVERTURE DE SAUVEGARDE ACCELEREE**

- M. Jean-Charles Naouri, 1 bis boulevard Richard Wallace 92200 Neuilly-sur-Seine, représentant légal, présent assisté du cabinet WEIL GOTSHAL & MANGE avocats et du cabinet GIBSON DUNN & CRUTCHER LLP avocats.
- M. Guillaume Appéré, 41 avenue d'Iéna 75116 Paris, représentant des salariés, présent.
- M. Jean-Romain Gotteland, conseil (cabinet ACCURACY), présent.
- La SELARL THEVENOT PARTNERS, prise en la personne de Me Aurélia Perdereau, 42 rue de Lisbonne 75008 Paris et la SCP BTSG en la personne de Me Marc Sénéchal, 15 rue de l'Hôtel de Ville 92200 Neuilly sur Seine, conciliateurs, présents.
- M. Pierre-Olivier Chotard, secrétaire général du CIRI, présent.
- M. Julien Bracq, secrétaire général adjoint du CIRI, présent.
- Mme Laure Decazes, rapporteur du CIRI, présente.

**FAITS ET PROCEDURE**

Par demande en date du 13 octobre 2023, CGP sollicite l'ouverture d'une procédure de sauvegarde accélérée, au visa des articles L. 628-1 et suivants du code de commerce.

Conformément aux dispositions de l'article R. 621-2 du code de commerce, le représentant légal de l'entreprise a été avisé par le greffier qu'il devait réunir, le cas échéant, les représentants de la délégation du personnel du comité social et économique, pour que soient désignées les personnes habilitées à être entendues par le tribunal et à exercer les voies de recours, conformément aux dispositions de l'article L. 661-10 du code de commerce.

La demande a été communiquée au ministère public qui, avisé de la date d'audience, est présent à la chambre du conseil qui l'a examinée le 16 octobre 2023.

La SELARL THEVENOT PARTNERS, prise en la personne de Me Aurélia Perdereau, et la SCP BTSG[2], prise en la personne de Me Marc Sénéchal, conciliateurs, désignées par ordonnance du président du tribunal de commerce de Paris en date du 25 mai 2023, ont été appelées et entendues en chambre du conseil, conformément à l'article R. 628-4 du code de commerce, leur rapport et les pièces ayant été déposés au greffe et communiqués à la

société et au ministère public préalablement à l'audience, selon les dispositions de l'article R. 628-2 du code de commerce.

A l'appui de sa demande, le dirigeant communique l'ensemble des pièces prévues par les dispositions de l'article R. 628-2 du code de commerce.

Présentation du groupe

Le Groupe Casino (ci-après le « Groupe ») est un groupe français du secteur de la grande distribution fondé en 1898. Le Groupe est l'un des leaders mondiaux du commerce alimentaire et dispose de plus de 12.000 magasins. Il développe depuis plusieurs années une stratégie multi-enseignes (Monoprix, Franprix, Vival, Spar, Sherpa, Naturalia, Leader Price et Cdiscount) et intervient sur une grande partie des formats de la grande distribution (hypermarchés, supermarchés, commerces de proximité, discount), ainsi que sur le e-commerce.

Le Groupe Casino dispose d'un vaste portefeuille d'enseignes en France, qui allient commerce physique et digital. Le Groupe s'est par ailleurs développé à l'étranger, plus particulièrement dans les pays qu'il considère à fort potentiel de croissance et de rentabilité. Ainsi, en Amérique latine (Brésil, Colombie, Argentine et Uruguay), le Groupe gère 3.118 magasins.

Activité du Groupe et principales données chiffrées

L'activité du Groupe Casino se répartit autour de trois grandes activités :

- l'activité France Retail (42,3% du chiffre d'affaires total en 2022)
- l'activité LATAM Retail (52,9% du chiffre d'affaires total en 2022)
- l'e-commerce (4,8% du chiffre d'affaires total en 2022).

Au 30 avril 2023, le Groupe employait un effectif total d'environ 54.000 salariés en France et de plus de 130.000 salariés dans le monde.

Les comptes de résultat consolidés du Groupe des trois derniers exercices se présentent comme suit :

| En millions d'euros | 2020 | 2021 | 2022 |
|---|---|---|---|
| Chiffre d'affaires consolidé | 31 912 | 30 549 | 33 610 |
| Résultat opérationnel courant | 1 426 | 1 193 | 1 117 |
| EBITDA consolidé | 2 742 | 2 527 | 2 508 |
| Résultat net consolidé | (660) | (397) | (345) |

Organigramme du Groupe

L'organigramme du Groupe Casino au 31 décembre 2022 se présente de la manière suivante :









## Présentation de CGP

CGP est la société faîtière du Groupe Casino. Elle élabore et met en œuvre la stratégie de développement, assure la coordination des différentes activités, gère le portefeuille des marques, dessins et modèles et veille au respect des obligations juridiques et comptables des filiales.

Au 10 octobre 2023, CGP emploie 11 salariés et n'a pas de comité économique et social.

Les comptes de résultat de CGP des trois derniers exercices se présentent comme suit :

| En millions d'euros | 2020 | 2021 | 2022 |
|---|---|---|---|
| **Chiffre d'affaires** | **171** | **154** | **143** |
| Résultat d'exploitation | 20 | 17 | 14 |
| Résultat net | (3) | (675) | (62) |

## Compétence de ce tribunal

Dans sa demande d'ouverture de procédure, CGP fonde la compétence du tribunal de céans sur le fait qu'elle est engagée dans une procédure de conciliation ouverte par le président de ce tribunal.

## Origine des difficultés et difficultés insurmontables

Les difficultés rencontrées par le Groupe sont de diverses natures :

- Un contexte économique défavorable

La pandémie de Covid-19 a entraîné une profonde mutation du marché de la grande distribution alimentaire en France, au profit de la proximité, des produits locaux et de la digitalisation (e-commerce, livraison à domicile, …).

Par ailleurs, le contexte international et, plus particulièrement la guerre en Ukraine, ont provoqué de fortes tensions sur l'approvisionnement et une hausse généralisée des prix (énergie, céréales, …) qui rejaillissent fortement sur le secteur de la grande distribution alimentaire.

- Des performances financières décevantes

Les comptes ont tous enregistrés des résultats nets consolidés négatifs de 2018 à 2021.

L'exercice 2022, malgré des mesures fortes de politique promotionnelle, a été marqué par une forte inflation alimentaire conduisant à une guerre des prix entre les distributeurs. Le Groupe Casino a dû faire face à un repli du chiffre d'affaires de ses hypermarchés et supermarchés en raison de pertes de parts de marché de ces magasins, compte tenu d'une politique de prix supérieurs à ceux de ses concurrents. Le résultat net consolidé est ainsi de nouveau négatif en 2022.

Par ailleurs, les performances du dernier trimestre 2022 qui n'ont pas été à la hauteur des attentes, ont entraîné un niveau élevé des stocks à fin 2022 (+426 M€ de stock dans le bilan consolidé au 31 décembre 2022 par rapport au 31 décembre 2021).

- Un endettement lourd

Par ailleurs, malgré un plan de cession d'actifs initié en 2018 d'un montant de l'ordre de 4,1 milliards d'euros à fin 2022 visant à désendetter le Groupe Casino, la dette nette reste à un niveau élevé (les dettes financières brutes non courantes s'établissent à 7.377 M€ au 31 décembre 2022, en constante progression par rapport aux clôtures précédentes).

Depuis le quatrième trimestre 2022, l'entreprise a consommé beaucoup de liquidités provenant de ses activités et a perdu le soutien financier des banques et de ses partenaires.

- La nécessité d'une évolution capitalistique

Dans ce contexte, à la lumière des contraintes mentionnées ci-dessus, un remaniement de la structure du capital s'est avéré nécessaire.

Le Groupe Casino a annoncé par communiqué de presse du 24 avril 2023 (i) avoir reçu une lettre d'intention conditionnelle de EP Global Commerce a.s. (une société tchèque contrôlée par M. Daniel Křetínský) proposant notamment la souscription à une augmentation de capital réservée de 750 M€ et (ii) être en discussions exclusives avec le Groupement Les Mousquetaires et Teract, pour approfondir la coopération stratégique existant entre le Groupement Les Mousquetaires et le Groupe Casino.

Procédure de conciliation





La réalisation de ces différentes opérations nécessitait l'approbation de certains créanciers du Groupe Casino ; c'est pour résoudre cette dernière difficulté que l'ouverture d'une procédure de conciliation a été sollicitée. Le président de ce tribunal y a fait droit par une ordonnance du 25 mai 2023 et a ouvert une procédure de conciliation pour une durée de quatre mois, jusqu'au 25 septembre 2023, au bénéfice des quinze sociétés suivantes du Groupe Casino :

| Société | RCS |
|---------|-----|
| CASINO, GUICHARD-PERRACHON | Saint-Etienne 554 501 171 |
| CASINO FINANCE | Saint-Etienne 538 812 405 |
| DISTRIBUTION CASINO FRANCE | Saint-Etienne 428 268 023 |
| CASINO PARTICIPATIONS FRANCE | Saint-Etienne 812 269 884 |
| QUATRIM | Saint-Etienne 833 032 121 |
| MONOPRIX HOLDING | Nanterre 775 705 601 |
| MONOPRIX | Nanterre 552 018 020 |
| MONOPRIX EXPLOITATION | Nanterre 552 083 297 |
| SEGISOR | Saint-Etienne 423 944 677 |
| EXTENC | Saint Etienne 824 152 128 |
| DISTRIBUTION FRANPRIX | Créteil 414 265 165 |
| GEIMEX | Créteil 303 765 291 |
| RELEVANC | Saint Etienne 824 155 824 |
| SEDIFRAIS | Pontoise 341 500 858 |
| FRANPRIX LEADER PRICE HOLDING | Créteil 343 045 316 |

Cette ordonnance a désigné la SELARL THEVENOT PARTNERS, prise en la personne de Me Aurélia Perdereau, et la SCP BTSG², prise en la personne de Me Marc Sénéchal, en qualité de conciliateurs, avec pour mission d'assister les requérantes dans :



- « *les discussions avec l'ensemble des parties prenantes, en particulier les partenaires financiers, en vue de permettre un désendettement significatif du Groupe Casino et un rééquilibrage de leur situation financière ;*
- *la mise en œuvre de toutes actions permettant de favoriser la mise en œuvre des opérations stratégiques ;*
- *et plus généralement, dans toute négociation utile permettant d'assurer la pérennité du Groupe Casino ».*

Par ordonnance du 20 septembre 2023, le président du tribunal a prolongé la procédure de conciliation pour une durée d'un mois à compter du 25 septembre 2023, soit jusqu'au 25 octobre 2023.

Déroulement de la procédure de conciliation

Dès l'ouverture de la procédure de conciliation, les sociétés, assistées de cabinets d'audit, ont établi des prévisions d'exploitation et de trésorerie sur la période courant de 2023 à 2028, afin de bâtir un plan de restructuration du Groupe Casino de nature à assurer sa pérennité.

Sur la base des prévisions de trésorerie à court terme, le Groupe Casino a annoncé diverses mesures visant à préserver sa trésorerie.

Sur la base des prévisions à plus long terme et du plan d'affaires du Groupe, deux offres préliminaires d'investissement ont été déposées le 3 juillet 2023, de la part :

- des sociétés EPGC (représentée par M. Daniel Křetínský) et Fimalac, d'une part
- de la société 3F (groupe d'investissement créé par MM. Moez-Alexandre Zouari, Xavier Niel et Matthieu Pigasse pour les besoins de l'opération) et des fonds Attestor, Davidson Kempner et Farallon, d'autre part.

Le 15 juillet 2023, à la suite des échanges intervenus entre les candidats et le Groupe Casino, sous l'égide des conciliateurs et de celle du comité interministériel de restructuration industrielle (CIRI), et après la présentation par chacun de son projet aux créanciers, une unique offre de reprise révisée a été reçue, de la part des sociétés EPGC et Fimalac, auxquelles s'est associé le fonds Attestor (ensemble le « Consortium »). Le groupement constitué de 3F, Attestor, Davidson Kempner et Farallon a quant à lui annoncé renoncer à son offre de reprise.

Les négociations se sont donc poursuivies avec le Consortium et ont abouti à la conclusion le 27 juillet 2023 d'un accord de principe entre le groupe Casino, le Consortium et les principaux créanciers sécurisés (l' « Accord de Principe »).

Des groupes bancaires représentant plus des deux tiers des crédits renouvelables ont également confirmé leur soutien à l'Accord de Principe. En parallèle, les discussions se sont poursuivies avec les porteurs d'obligations QUATRIM et ont abouti également à la conclusion d'un accord le 18 septembre 2023.

Enfin, à l'issue de négociations avec le Consortium et les groupes de ses principaux créanciers sécurisés, le Groupe a annoncé le 5 octobre 2023 avoir conclu un accord contraignant, dit de « lock-up » (ci-après « l'Accord de Lock-Up »), visant à traduire juridiquement les principes découlant de l'Accord de Principe et dont les signataires s'engagent à soutenir et à réaliser toute démarche ou action raisonnablement nécessaire à la mise en œuvre et à la réalisation effective de la restructuration du Groupe telle qu'envisagée.

Des discussions ont également été tenues avec les créanciers non sécurisés, auxquels une proposition a été adressée par le Consortium et qui ont eu la possibilité d'adhérer à l'Accord de Lock-Up avant le 17 octobre 2023 pour marquer leur accord sur la restructuration financière envisagée.

La restructuration financière du Groupe Casino envisagée, telle que découlant de l'Accord de Principe et de l'Accord de Lock-Up, peut être synthétisée comme suit :

- apport de capitaux propres en numéraire de 1,2 milliard d'euros, dont :
  ○ 925 M€ souscrits par le Consortium
  ○ 275 M€ ouverts par ordre de priorité (i) aux créanciers sécurisés, (ii) aux créanciers non sécurisés, (iii) aux porteurs de TSSDI (obligations à durée





TRIBUNAL DE COMMERCE DE PARIS
JUGEMENT DU MERCREDI 25/10/2023
2 EME CHAMBRE

N° RG : 2023059148

FAGE 7

perpétuelle), (iv) à tous les créanciers et, le cas échéant, (v) aux actionnaires, entièrement garantis par un groupe de créanciers
-    traitement des dettes bancaire et financière
•    les dettes fiscales et sociales, les dettes relatives aux swaps, les dettes fournisseurs et les dettes intragroupe n'étant pas affectées par ces accords.

La mise en œuvre de cette restructuration financière implique :

-    l'ouverture de procédures de sauvegarde accélérée au bénéfice des sociétés CASINO GUICHARD-PERRACHON, CASINO FINANCE, DISTRIBUTION CASINO FRANCE, CASINO PARTICIPATIONS FRANCE, QUATRIM, MONOPRIX et SEGISOR, pour lesquelles le nombre de créanciers et la complexité des financements affectés rend impossible la conclusion d'un accord unanime
-    le constat par le président du tribunal d'un protocole de conciliation pour les sociétés opérationnelles pour lesquelles il n'est pas engagé de restructuration significative
-    la sortie de la procédure de conciliation de certaines autres sociétés, qui bénéficient de l'extension des financements opérationnels prévue par les projets de plan de sauvegarde accélérée.

C'est dans ces conditions que CGP a introduit la présente demande, estimant qu'une procédure de sauvegarde accélérée pourrait offrir une issue à travers l'institution de classes de parties affectées, la présentation d'un plan de sauvegarde et la mise en œuvre, si nécessaire, de la clause d'application forcée interclasse, selon les dispositions de l'article L. 626-32 du code de commerce.

Mme Linda Tortosa, substitut de la vice-procureure de la République, entendue en ses observations, s'est déclarée favorable à l'ouverture de la procédure et a indiqué ne pas être opposée à la désignation de Me Bourbouloux en qualité d'administrateur judiciaire.

A l'issue de l'audience de la chambre du conseil du 16 octobre 2023, le président a clos les débats et annoncé qu'un jugement serait prononcé le 25 octobre 2023 par mise à disposition au greffe, en application de l'article 450 du code de procédure civile.


**SUR CE,**

Sur la compétence du tribunal de commerce de Paris

Attendu que CGP n'a pas son siège dans le ressort de ce tribunal ; que cependant, CGP est engagée dans une procédure de conciliation ouverte par le président du tribunal de commerce de Paris et que l'article L. 628-1 du code de commerce réserve la sauvegarde accélérée aux débiteurs engagés dans une telle procédure ;

Le tribunal se déclarera compétent ;

Sur l'ouverture d'une procédure de sauvegarde accélérée

Attendu que l'article 628-1 du code de commerce dispose que :

*« Il est institué une procédure de sauvegarde accélérée soumise aux règles du présent titre sous réserve des dispositions du présent chapitre. N'y sont pas applicables les dispositions du III et du IV de l'article L. 622-13 et celles des sections 3 et 4 du chapitre IV.*

*84*

*La procédure de sauvegarde accélérée est ouverte à la demande d'un débiteur engagé dans une procédure de conciliation qui justifie avoir élaboré un projet de plan tendant à assurer la pérennité de l'entreprise. Ce projet doit être susceptible de recueillir, de la part des parties affectées à l'égard desquelles l'ouverture de la procédure produira effet, un soutien suffisamment large pour rendre vraisemblable son adoption dans le délai prévu au premier alinéa de l'article L. 628-8.*

*Sans préjudice de l'article L. 628-6, lorsque les comptes du débiteur font apparaître que la nature de l'endettement rend vraisemblable l'adoption d'un plan par les seuls créanciers ayant la qualité de sociétés de financement, d'établissements de crédit et assimilés, tel que définis par décret en Conseil d'Etat, ainsi que par tous les titulaires d'une créance acquise auprès de ceux-ci ou d'un fournisseur de biens ou de services et s'il y a lieu des obligataires, le débiteur peut demander l'ouverture d'une procédure de sauvegarde dont les effets sont limités à ces créanciers.*

*La procédure ne peut être ouverte qu'à l'égard d'un débiteur dont les comptes ont été certifiés par un commissaire aux comptes ou établis par un expert-comptable.*

*La circonstance que le débiteur soit en cessation des paiements ne fait pas obstacle à l'ouverture de la procédure de sauvegarde accélérée si cette situation ne précède pas depuis plus de quarante-cinq jours la date de la demande d'ouverture de la procédure de conciliation préalable. »* ;

Attendu que le tribunal a entendu le dirigeant sur les difficultés insurmontables rencontrées par la demanderesse ;

Attendu qu'en l'espèce, CGP est engagée dans une procédure de conciliation ;

Attendu que CGP fournit au tribunal un projet de plan qui s'articule autour des engagements pris dans le cadre de l'Accord de Principe du 27 juillet 2023, complété par l'Accord de Lock-Up du 5 octobre 2023 ; que ces accords organisent un apport de capitaux propres de 1.200 M€ en numéraire, une conversion totale de la dette non sécurisée en capitaux propres, une conversion partielle de la dette sécurisée en capitaux propres et la réinstallation du solde de cette dette non sécurisée en nouveaux crédits, le remboursement de dettes obligataires, ainsi que le maintien de certaines autres lignes de financement ; que les conciliateurs évaluent à 6.100 M€ le montant de la diminution prévue de l'endettement net du Groupe Casino ; que par conséquent le tribunal estime que ces accords sont de nature à assurer la pérennité de CGP ;

Attendu que le projet de plan de sauvegarde élaboré par CGP contient les dispositions du refinancement et de la restructuration financière prévues par l'Accord de Principe et par l'Accord de Lock-Up ; que l'Accord de Lock-Up a d'ores et déjà, au jour de l'audience du 16 octobre 2023, recueilli l'adhésion d'environ 91% des créanciers titulaires de dettes sécurisées, 49% des créanciers titulaires de dettes non sécurisées et 22% des actionnaires (ce qui représente 55% des actionnaires hors l'actionnaire de référence du Groupe) ; que le tribunal estime ainsi que ces adhésions témoignent, au sens de l'alinéa 2 de l'article L. 628-1 du code de commerce, d'un *« soutien suffisamment large pour rendre vraisemblable [l']adoption »* du projet de plan de sauvegarde accélérée, fût-ce au prix d'une application forcée du plan qui pourrait alors être imposée aux classes de parties affectées refusant le plan, conformément aux dispositions de l'article L. 626-32 du code de commerce ;

Attendu que l'extrait K-bis de CGP montre que ses états financiers sont contrôlés par un commissaire aux comptes ;



*85*

TRIBUNAL DE COMMERCE DE PARIS
JUGEMENT DU MERCREDI 25/10/2023
2 EME CHAMBRE

N° RG : 2023059148

PAGE 9

Attendu que CGP a réitéré, lors de l'audience du 16 octobre 2023, la déclaration, qu'elle avait faite au président du tribunal lors de l'examen de la demande d'ouverture de conciliation, de ne pas être en cessation des paiements depuis plus de 45 jours avant l'ouverture de la conciliation ; qu'elle produit de surcroît une attestation, émanant d'un cabinet d'audit, confirmant cette absence d'état de cessation des paiements ;

Qu'ainsi l'ensemble des conditions d'ouverture d'une procédure de sauvegarde accélérée sont réunies ;

Attendu que l'article 628-2 du code de commerce dispose que :

« *Le tribunal statue sur l'ouverture de la procédure après un rapport du conciliateur sur le déroulement de la conciliation et les perspectives d'adoption du projet de plan par les parties affectées concernées. Il peut obtenir communication des pièces et actes relatifs à la conciliation et, le cas échéant, au mandat ad hoc nonobstant les dispositions de l'article L. 611-15.*

*L'ouverture de la procédure est examinée en présence du ministère public.* » ;

Attendu que Me Perdereau et Me Sénéchal, conciliateurs, ont fait un rapport en chambre du conseil sur le déroulement de la conciliation et les perspectives d'adoption du projet de plan de sauvegarde par les parties affectées concernées ; que le ministère public était présent à l'audience ; qu'ainsi les conditions posées par cet article sont remplies ;

Attendu que les conciliateurs, le représentant des salariés et le ministère public se sont déclarés favorables à l'ouverture de la procédure ;

Le tribunal ouvrira une procédure de sauvegarde accélérée à l'égard de CGP ;

Sur les organes de la procédure

Attendu que Me Perdereau, conciliateur, exerce la profession d'administrateur judiciaire, et sera par conséquent nommée à cette fonction, conformément à l'article L. 628-3 du code de commerce ;

Attendu que Me Sénéchal, conciliateur, exerce la profession de mandataire judiciaire, et sera par conséquent nommé à cette fonction, conformément à l'article L. 628-3 du code de commerce ;

Attendu que CGP sollicite la désignation de Me Bourbouloux en qualité d'administrateur judiciaire ; que le ministère public n'y est pas opposé ; que Me Bourbouloux sera nommée à cette fonction ;

Attendu que la société Rallye, actionnaire de référence du Groupe Casino, a fait l'objet par ce tribunal de l'arrêt d'un plan de sauvegarde le 20 février 2020 ; que le tribunal estime qu'il est d'une bonne administration de la justice que les commissaires à l'exécution du plan (Me Bourbouloux et Me Abitbol), ainsi que les mandataires judiciaires de la procédure de sauvegarde de la société Rallye (Me Leloup-Thomas et Me Corre), soient désignés en qualité d'organes de la présente procédure ;

Qu'ainsi Me Abitbol sera nommé en qualité d'administrateur judiciaire ;



TRIBUNAL DE COMMERCE DE PARIS
JUGEMENT DU MERCREDI 25/10/2023
2 EME CHAMBRE

*86*

N° RG : 2023059148

PAGE 10

Qu'ainsi Me Leloup-Thomas et Me Corre seront nommés en qualité de mandataires judiciaires ;

<u>Sur les autres demandes</u>

Attendu que CGP sollicite d'être dispensée de l'inventaire prévu par l'article L. 622-6-1 du code de commerce ; que le tribunal, eu égard à l'activité de holding de CGP, accordera cette dispense ;

Attendu que, par ailleurs, CGP demande au tribunal de :

- dire que les effets de la procédure de sauvegarde accélérée seront limités aux parties mentionnées à l'article L. 626-30 du code de commerce directement affectées par le projet de plan mentionné à l'article L. 628-1 alinéa 2 du code de commerce et n'affecteront pas l'exécution normale de la convention de centralisation de trésorerie du Groupe Casino
- rappeler le principe de l'effet *erga omnes* du jugement d'ouverture à intervenir et en particulier l'interdiction d'appréhender les actifs grevés de sûretés du débiteur pour les créanciers concernés par la procédure de sauvegarde accélérée, et ce, quelle que soit la localisation desdits créanciers
- rappeler que le tribunal de commerce de Paris a une compétence exclusive, en tant que tribunal de la procédure collective, pour trancher toute question relative à la procédure, à ses conséquences sur les droits et actifs de CGP (en particulier leur appréhension par les créanciers), et tout contentieux y afférent
- dire que M. Alexis Ravalais et M. David Lubek désignés par le conseil d'administration de la société CASINO, GUICHARD-PERRACHON, sont autorisés à agir aux Etats-Unis en qualité de « *foreign representative* » dans toute procédure de « *Chapter 15* » du « *Federal Bankruptcy code* » en lien avec la procédure de sauvegarde accélérée de CGP et que ces « *foreign representative* » sont autorisés à prendre toute mesure et à déposer tout document en lien avec toute procédure relevant du « *Chapter 15* » et à prendre les mesures qu'ils jugent appropriées à cet égard
- dire que CGP déposera dans les dix jours suivant le jugement d'ouverture, la liste des créanciers visée à l'article L. 628-7 du code de commerce ;

Attendu que le tribunal fera droit aux demandes ci-dessus ;

Le tribunal statuera dans les termes ci-après.

**PAR CES MOTIFS**

Le tribunal, après en avoir délibéré, statuant par jugement contradictoire en premier ressort,

Se déclare compétent ;

Met fin à la procédure de conciliation ouverte à l'égard de la SA CASINO, GUICHARD-PERRACHON, selon ordonnance du 25 mai 2023, ainsi qu'à la mission de conciliateurs confiée à la SELARL THEVENOT PARTNERS, prise en la personne de Me Aurélia Perdereau, et la SCP BTSG², prise en la personne de Me Marc Sénéchal ;

Ouvre une procédure de sauvegarde accélérée à l'égard de la SA CASINO, GUICHARD-PERRACHON, société anonyme dont le siège social est situé 1 cours Antoine Guichard à Saint-Etienne (42000), immatriculée au registre du commerce et des sociétés de Saint-Etienne sous le numéro 554 501 171, Nom commercial : "CASINO" "GEANT" "PRODUITS



*87*

CASINO" "PETIT CASINO STORE" "VIVAL STORE" "SPAR STORE" "ECOSERVICE STORE" "TOUT SIMPLEMENT"
Activité : Activités administratives et commerciales
*Etablissement(s)*
- RCS Créteil

Désigne M. Michel Teytu en qualité de juge-commissaire ;

Désigne la SCP d'ADMINISTRATEURS JUDICIAIRES ABITBOL ET ROUSSELET, prise en la personne de Me Frédéric Abitbol, 38 avenue Hoche 75008 Paris la SELARL FHBX, prise en la personne de Me Hélène Bourbouloux, 176 avenue Charles de Gaulle 92200 Neuilly sur Seine, et la SELARL THEVENOT PARTNERS, prise en la personne de Me Aurélia Perdereau, 42 rue de Lisbonne 75008 Paris, en qualité d'administrateurs judiciaires, avec pour mission de surveiller ;

Désigne la SELARL FIDES, prise en la personne de Me Bernard Corre, 105 rue de Palestro 75002 Paris, la SELAFA MJA, prise en la personne de Me Valérie Leloup-Thomas, 102 rue du Faubourg Saint Denis 75479 Paris cedex et la SCP BTSG², prise en la personne de Me Marc Sénéchal, 15 rue de l'Hôtel de Ville 92200 Neuilly sur Seine, en qualité de mandataires judiciaires ;

Ordonne la constitution des classes de parties affectées prévue à l'article L. 626-30 du code de commerce ;

Dispense la SA CASINO, GUICHARD-PERRACHON de l'inventaire prévu par l'article L. 622-6-1 du code de commerce ;

Dit que les effets de la procédure de sauvegarde accélérée seront limités aux parties mentionnées à l'article L. 626-30 du code de commerce directement affectées par le projet de plan mentionné à l'article L. 628-1 alinéa 2 du code de commerce et n'affecteront pas l'exécution normale de la convention de centralisation de trésorerie du Groupe Casino ;

Rappelle le principe de l'effet *erga omnes* du jugement d'ouverture et en particulier l'interdiction d'appréhender les actifs grevés de sûretés de la SA CASINO, GUICHARD-PERRACHON pour les créanciers concernés par la procédure de sauvegarde accélérée, et ce, quelle que soit la localisation desdits créanciers ;

Rappelle que le tribunal de commerce de Paris a une compétence exclusive, en tant que tribunal de la procédure collective, pour trancher toute question relative à la procédure, à ses conséquences sur les droits et actifs de la SA CASINO, GUICHARD-PERRACHON (en particulier leur appréhension par les créanciers), et tout contentieux y afférent :

Dit que M. Alexis Ravalais et M. David Lubek désignés par le conseil d'administration de la SA CASINO, GUICHARD-PERRACHON, sont autorisés à agir aux Etats-Unis en qualité de « *foreign representative* » dans toute procédure de « *Chapter 15* » du « *Federal Bankruptcy code* » en lien avec la procédure de sauvegarde accélérée de la SA CASINO, GUICHARD-PERRACHON et que ces « *foreign representative* » sont autorisés à prendre toute mesure et à déposer tout document en lien avec toute procédure relevant du « *Chapter 15* » et à prendre les mesures qu'ils jugent appropriées à cet égard ;

Dit que la SA CASINO, GUICHARD-PERRACHON déposera dans les dix jours suivant le présent jugement la liste des créanciers visées à l'article L. 628-7 du code de commerce ;

Fixe au 11 décembre 2023 la date de l'audience à l'issue de laquelle il sera statué sur le projet de plan ou sur la prolongation du délai de deux mois prévu à l'article L. 628-8 du code de commerce ;

Dit que le jugement est exécutoire de plein droit ;

Dit que les dépens du présent jugement liquidés à la somme de 121,17 euros TTC (dont TVA : 17,53 euros) seront employés en frais de sauvegarde judiciaire.

Retenu à l'audience de la chambre du conseil du 16 octobre 2023 où siégeaient MM. Michel Teytu, Patrick Gautier, Guillaume Simon, Pascal Gagna et Olivier Dubois ;

Délibéré par les mêmes juges,

Dit que le présent jugement est prononcé par sa mise à disposition au greffe de ce tribunal, les parties en ayant été préalablement avisées lors des débats dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

La minute du jugement est signée par M. Michel Teytu, président du délibéré, et par M. Laurent Cuny, greffier.

Le greffier

Le président



Certified letter with return receipt requested :
- SA CASINO GUICHARD-PERRACHON
- Paymaster general
- Maître Frédéric Abitbol
- Maître Hélène Bourbouloux
- Maître Aurélia Perdereau
- Maître Marc Sénéchal
- Maître Valérie Leloup-Thomas
- Maître Bernard Corre
- State prosecutor's office

77

[barcode]

**FRENCH REPUBLIC**
**IN THE NAME OF THE FRENCH PEOPLE**
**PARIS COMMERCIAL COURT**
**2nd CHAMBER**
**JUDGMENT PRONOUNCED ON 10/25/2023**
**By being made available at the clerk's office**

Case list no. 2023059148
P202302888

7

SA CASINO, GUICHARD-PERRACHON (hereinafter "CGP"), an incorporated company having its registered office at 1 cours Antoine Guichard, Saint-Etienne (42000), registered with the Saint-Etienne Trade and Companies Register under number 554 501 171.

**ACCELERATED SAFEGUARD OPENING JUDGMENT**

- Mr. Jean-Charles Naouri, 1 bis boulevard Richard Wallace 92200 Neuilly-sur-Seine, legal representative, present and assisted by WEIL GOTSHAL & MANGES attorneys and GIBSON DUNN & CRUTCHER LLP attorneys.
- Mr. Guillaume Appéré, 41 avenue d'Iéna 75116 Paris, employee representative, present.
- Mr. Jean-Romain Gotteland, consultant (ACCURACY), present.
- SELARL THEVENOT PARTNERS, represented by Maître Aurélia Perdereau, 42 rue de Lisbonne 75008 Paris and SCP BTSG represented by Maître Marc Sénéchal, 15 rue de l'Hôtel de Ville 92200 Neuilly sur Seine, conciliators, present.
- Mr. Pierre-Olivier Chotard, Secretary General of the CIRI (Industrial Restructuring Interministerial Committee), present.
- Mr. Julien Bracq, Deputy Secretary General of the CIRI, present.
- Ms. Laure Decazes, rapporteur of the CIRI, present.

**FACTS AND PROCEEDINGS**

By application dated October 13, 2023, CGP requested the opening of accelerated safeguard proceedings, pursuant to Articles L. 628-1 et seq. of the French Commercial Code.

In accordance with the provisions of Article R. 621-2 of the French Commercial Code, the company's legal representative was informed by the court clerk that he had to convene, if applicable, the representatives of the staff delegation of the works council, in order to appoint the persons authorized to be heard by the court and exercise the legal remedies, in accordance with the provisions of Article L. 661-10 of the French Commercial Code.

The application was communicated to the state prosecutor who, notified of the hearing date, was present in the court chambers which examined it on October 16, 2023.

SELARL THEVENOT PARTNERS, represented by Maître Aurélia Perdereau, and SCP BTSG[2], represented by Maître Marc Sénéchal, conciliators, appointed by order of the Presiding Judge of the Paris Commercial Court dated May 25, 2023, were called and heard in court chambers, in accordance with Article R. 628-4 of the French Commercial Code, their report and the exhibits having been filed with the clerk's office and communicated to the company and the state prosecutor's office prior to the hearing, in accordance with the provisions of Article R. 628-2 of the French Commercial Code.

L



*Initials*        Page 1

In support of its application, the senior manager communicated all the required exhibits under Article R. 628-2 of the French Commercial Code.

<u>Group presentation</u>

The Casino Group (hereinafter the "Group"), is a French retail group founded in 1898. The Group is one of the world's leading food retailers, with over 12,000 stores. For several years, it has been developing a multi-brand strategy (Monoprix, Franprix, Vival, Spar, Sherpa, Naturalia, Leader Price and Cdiscount) and operates in a large share of retail formats (hypermarkets, supermarkets, convenience stores, discount stores), as well as in e-commerce.

The Casino Group has a vast portfolio of brands in France, combining physical and digital retailing. The Group has also expanded abroad, more specifically in countries it considers to have strong growth and profitability potential. For example, in Latin America (Brazil, Colombia, Argentina and Uruguay), the Group manages 3,118 stores.

<u>The Group's activity and key figures</u>

The Casino Group's business is divided into three main activities:

- France Retail (42.3% of total sales in 2022)
- LATAM Retail (52.9% of total sales in 2022)
- E-commerce (4.8% of total sales in 2022).

As at April 30, 2023, the Group employed a total workforce of around 54,000 employees in France and over 130,000 employees worldwide.

The Group's consolidated profit-and-loss accounts for the last three financial years are as follows:

| In €M | 2020 | 2021 | 2022 |
|---|---|---|---|
| Consolidated turnover | 31 912 | 30 549 | 33 610 |
| Current operating income | 1 426 | 1 193 | 1 117 |
| Consolidated EBITDA | 2 742 | 2 527 | 2 508 |
| Consolidated net income | (660) | (397) | (345) |

<u>Group's organization chart</u>

The Casino Group's organization chart as at December 31, 2022, is as follows:

*L*                                                                 *Initials*



PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2ⁿᵈ CHAMBER

Case list no.: 2023059148

*79*
PAGE 3



## Presentation of CGP

CGP is the holding company of the Casino Group. It draws up and implements the development strategy, coordinates the various activities, manages the portfolio of trademarks, designs and models, and ensures compliance with the legal and accounting obligations of subsidiaries.

As at October 10, 2023, CGP employs 11 employees and does not have a works council.

CGP's profit-and-loss accounts for the last three financial years are as follows:

| In €M | 2020 | 2021 | 2022 |
|---|---|---|---|
| **Turnover** | **171** | **154** | **143** |
| Operating income | 20 | 17 | 14 |
| Net income | (3) | (675) | (62) |

## Jurisdiction of this court

In its application to initiate proceedings, CGP bases the jurisdiction of this court on the fact that it is involved in conciliation proceedings initiated by the Presiding Judge of this court.

## Origin of difficulties and insurmountable difficulties

PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2ⁿᵈ CHAMBER

Case list no.: 2023059148

*L*

*Initials*

*80*
PAGE 4

The difficulties encountered by the Group are of various kinds:

- An adverse economic environment

The Covid-19 pandemic has led to a significant change in the French food retail market, in favor of proximity, local products and digitalization (e-commerce, home delivery, etc.).

Moreover, the international context, and more specifically the war in Ukraine, have led to considerable tension over supplies and a generalized increase in prices (energy, cereals, etc.), which are having a major impact on the food retail sector.

- Disappointing financial performances

The financial statements all recorded negative consolidated net income from 2018 to 2021.

Despite strong promotional policy measures, financial year 2022 was marked by high food inflation, leading to a price war between retailers. The Casino Group had to cope with a decline in turnover of its hypermarkets and supermarkets due to losses of market shares of these stores, given a policy of higher prices than its competitors. As a result, the consolidated net income was again negative in 2022.

In addition, performances in the last quarter of 2022, which did not meet expectations, resulted in a high level of inventory at the end of 2022 (+€426 M of inventory in the consolidated balance sheet as at December 31, 2022, compared with December 31, 2021).

- High level of indebtedness

Moreover, despite an asset disposal plan initiated in 2018 amounting to *circa* €4.1 bn at the end of 2022 aimed at reducing the Casino Group's debt, net debt remains at a high level (gross non-current financial debts stood at €7,377 M on December 31, 2022, up steadily compared with previous closes).

Since the fourth quarter of 2022, the company has consumed a significant amount of liquidity from its activities and lost the financial support of banks and its partners.

- The need for a change in ownership structure

Considering this situation, and in light of the constraints mentioned above, a restructuring of the capital structure proved to be necessary.

The Casino Group announced in a press release dated April 24, 2023 (i) that it had received a conditional letter of intent from EP Global Commerce a.s. (a Czech company controlled by Mr. Daniel Křetínský) proposing in particular the subscription to a reserved capital increase of €750 M and (ii) that it was in exclusive discussions with Groupement Les Mousquetaires and Teract, to deepen the existing strategic cooperation between Groupement Les Mousquetaires and the Casino Group.

<u>Conciliation proceedings</u>

*L*

*Initials*



PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2ⁿᵈ CHAMBER

Case list no.: 2023059148

*81*
PAGE 5

The completion of these various operations required the approval of certain creditors of the Casino Group; it was to overcome this last difficulty that the opening of conciliation proceedings was requested. By order dated May 25, 2023, the Presiding Judge of this court granted this request, and opened conciliation proceedings for a period of four months, until September 25, 2023, for the benefit of the following fifteen companies of the Casino Group:

| Company | Trade and Companies Register |
|---|---|
| CASINO, GUICHARD-PERRACHON | Saint-Etienne 554 501 171 |
| CASINO FINANCE | Saint-Etienne 538 812 405 |
| DISTRIBUTION CASINO FRANCE | Saint-Etienne 428 268 023 |
| CASINO PARTICIPATIONS FRANCE | Saint-Etienne 812 269 884 |
| QUATRIM | Saint-Etienne 833 032 121 |
| MONOPRIX HOLDING | Nanterre 775 705 601 |
| MONOPRIX | Nanterre 552 018 020 |
| MONOPRIX EXPLOITATION | Nanterre 552 083 297 |
| SEGISOR | Saint-Etienne 423 944 677 |
| EXTENC | Saint-Etienne 824 152 128 |
| DISTRIBUTION FRANPRIX | Créteil 414 265 165 |
| GEIMEX | Créteil 303 765 291 |
| RELEVANC | Saint-Etienne 824 155 824 |
| SEDIFRAIS | Pontoise 341 500 858 |
| FRANPRIX LEADER PRICE HOLDING | Créteil 343 045 316 |

This order appointed SELARL THEVENOT PARTNERS, represented by Maître Aurélia Perdereau, and SCP BTSG², represented by Maître Marc Sénéchal, as conciliators, with the task of assisting the applicants in:

- *"the discussions with all stakeholders, in particular the financial partners, with a view to significantly reducing the debt of the Casino Group and rebalancing their financial position;*
- *the implementation of all actions making it possible to promote the implementation of strategic operations;*
- *and, more generally, in any useful negotiations making it possible to ensure the continued existence of the Casino Group".*

By order dated September 20, 2023, the Presiding Judge of the court extended the conciliation proceedings for one month from September 25, 2023, i.e. until October 25, 2023.

Course of the conciliation proceedings

*L*

*Initials*

PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2nd CHAMBER

Case list no.: 2023059148

*82*
PAGE 6

As soon as the conciliation proceedings were initiated, the companies, assisted by audit firms, established operating and cash flow forecasts for the period from 2023 to 2028, in order to put together a plan to restructure the Casino Group likely to ensure its continued existence.

On the basis of short-term cash flow forecasts, the Casino Group announced various measures aimed at preserving its liquidity.

On the basis of longer-term forecasts and the Group's business plan, two preliminary investment offers were submitted on July 3, 2023, by:

- EPGC (represented by Mr. Daniel Křetínský) and Fimalac, on the one hand,
- 3F (investment group set up by Messrs. Moez-Alexandre Zouari, Xavier Niel and Matthieu Pigasse for the purposes of the transaction) and the funds Attestor, Davidson Kempner and Farallon on the other hand.

On July 15, 2023, following discussions between the bidders and the Casino Group under the aegis of the conciliators and that of the *Industrial Restructuring Interministerial Committee* (CIRI), and after each one presented their project to the creditors, a single revised takeover offer was received from EPGC and Fimalac, to which the fund Attestor joined (together the "Consortium"). The consortium made up of 3F, Attestor, Davidson Kempner and Farallon for its part announced that it was withdrawing its takeover offer.

Negotiations therefore continued with the Consortium, culminating in the conclusion on July 27, 2023, of an agreement in principle between the Casino Group, the Consortium and the main secured creditors (the "Agreement in Principle").

Banking groups representing more than two-thirds of revolving credit facilities also confirmed their support for the Agreement in Principle. At the same time, discussions continued with QUATRIM bondholders, also leading to the conclusion of an agreement on September 18, 2023.

Finally, following negotiations with the Consortium and the groups of its main secured creditors, the Group announced on October 5, 2023, that it had entered into a binding "lock-up" agreement (hereinafter the "Lock-Up Agreement"), aimed at legally formalizing the principles arising from the Agreement in Principle, and the signatories of which undertake to support and take any steps or actions reasonably necessary for the implementation and effective realization of the Group's restructuring as envisaged.

Discussions were also held with the unsecured creditors, to whom a proposal was sent by the Consortium and who were given the opportunity to adhere to the Lock-Up Agreement before October 17, 2023, to indicate their agreement to the financial restructuring envisaged.

The financial restructuring of the Casino Group envisaged, as set out in the Agreement in Principle and the Lock-Up Agreement, can be summarized as follows:

- contribution of €1.2 bn of equity in cash, including:
    - €925 M subscribed by the Consortium;
    - € 275 M open by order of priority to (i) secured creditors, (ii) unsecured creditors, (iii) holders of TSSDI (undated deeply subordinated bonds), (iv) all creditors and, if applicable, (v) shareholders, fully backstopped by a group of creditors.

*L*

*Initials*



PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2ⁿᵈ CHAMBER

Case list no.: 2023059148

*83*
PAGE 7

- treatment of bank and financial debts
- tax and social security debts, swap-related debts, supplier debts and intra-group debts are not affected by these agreements.

The implementation of this financial restructuring involves:

- the opening of accelerated safeguard proceedings for CASINO GUICHARD-PERRACHON, CASINO FINANCE, DISTRIBUTION CASINO FRANCE, CASINO PARTICIPATIONS FRANCE, QUATRIM, MONOPRIX and SEGISOR, for which the number of creditors and the complexity of the affected financings make it impossible to reach a unanimous agreement
- the acknowledgment by the Presiding Judge of the court of a conciliation protocol for the operational companies for which no significant restructuring has been embarked upon
- the exit from the conciliation proceedings of certain other companies, which benefit from the extension of operational financings provided for in the draft accelerated safeguard plans.

It is under these conditions that CGP filed this application, believing that accelerated safeguard proceedings could offer a solution through the formation of classes of affected parties, the presentation of a safeguard plan and the implementation, if necessary, of the cross-class cram-down clause, in accordance with the provisions of Article L. 626-32 of the French Commercial Code.

Ms. Linda Tortosa, replacement district attorney, heard in her observations, expressed support for the initiation of the proceedings and indicated that she did not object to the appointment of Maître Bourbouloux as receiver.

Following the hearing in the court chambers on October 16, 2023, the Presiding Judge closed the proceedings and announced that a judgment would be pronounced on October 25, 2023, by being made available at the clerk's office, pursuant to Article 450 of the French Code of Civil Procedure.

**WHEREUPON,**

<u>Regarding the jurisdiction of the Paris Commercial Court</u>

Whereas CGP does not have its registered office within the jurisdiction of this court; whereas, however, CGP is involved in conciliation proceedings initiated by the Presiding Judge of the Paris Commercial Court and Article L. 628-1 of the French Commercial Code reserves accelerated safeguard for debtors involved in such proceedings;

The court shall declare that it has jurisdiction;

<u>Regarding the opening of accelerated safeguard proceedings</u>

Whereas Article 628-1 of the French Commercial Code provides that:

*"Accelerated safeguard proceedings subject to the rules of this section are introduced subject to the provisions of this chapter. The provisions of III and IV of Article L. 622-13 and those of sections 3 and 4 of chapter IV are not applicable to it.*

L

*Initials*



PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2ᴺᴰ CHAMBER

Case list no.: 2023059148

*84*
PAGE 8

*The accelerated safeguard proceedings are opened at the request of a debtor involved in conciliation proceedings who can prove having drawn up a draft plan aimed at ensuring the company's continued existence. This draft plan must be likely to receive sufficiently broad support from the parties affected with regard to whom the opening of the proceedings will have an effect to make its adoption probable within the timeframe set out in the first paragraph of Article L. 628-8.*

*Without prejudice to Article L. 628-6, when the debtor's financial statements show that the nature of the indebtedness makes it likely that a plan will be adopted only by creditors having the status of financing companies, credit institutions, and similar entities, as defined by decree in the Council of State, as well as by all holders of a claim acquired from them or from a supplier of goods or services, and if applicable bondholders, the debtor may request the initiation of safeguard proceedings, the effects of which are limited to these creditors.*

*The proceedings may only be opened with regard to a debtor, the financial statements of which have been certified by a statutory auditor or drawn up by a chartered accountant.*

*The fact that the debtor is cash flow insolvent (en cessation des paiements) is not an obstacle to the opening of accelerated safeguard proceedings if this situation has not existed for more than forty-five days prior to the date of the application to open the preliminary conciliation proceedings.";*

Whereas the court heard the senior manager on the insurmountable difficulties encountered by the applicant;

Whereas, in this case, CGP is involved in conciliation proceedings;

Whereas CGP provides the court with a draft plan based on the commitments made in the Agreement in Principle of July 27, 2023, supplemented by the Lock-Up Agreement of October 5, 2023; whereas these agreements provide for an equity contribution of €1,200 M in cash, a total conversion of the unsecured debt into equity, a partial conversion of the secured debt into equity and the reinstatement of the balance of this unsecured debt as new loans, the repayment of bonded debts, as well as the continuation of certain other lines of financing; whereas the conciliators assess the amount of the planned reduction in the Casino Group's net debt at €6,100 M; whereas accordingly the court considers that these agreements are such as to ensure CGP's continued existence;

Whereas the draft safeguard plan drawn up by CGP contains the refinancing and financial restructuring provisions set out in the Agreement in Principle and the Lock-Up Agreement; whereas as at the date of the hearing on October 16, 2023, the Lock-Up Agreement had already been accepted by *circa* 91% of secured debt creditors, 49% of unsecured debt creditors and 22% of shareholders (representing 55% of shareholders excluding the Group's major shareholder); whereas the Court therefore considers that these accessions indicate, within the meaning of paragraph 2 of Article L. 628-1 of the French Commercial Code, *"sufficiently broad support to make probable the adoption"* of the draft accelerated safeguard plan, even at the cost of cross-class cram-down of the plan, which could then be imposed on the classes of affected parties refusing the plan, in accordance with the provisions of Article L. 626-32 of the French Commercial Code;

Whereas CGP's K-bis extract (company registration certificate) shows that its financial statements are audited by a statutory auditor;



PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2nd CHAMBER

Case list no.: 2023059148

*L*

*Initials*

*85*
PAGE 9

Whereas CGP reiterated, at the hearing of October 16, 2023, the representation it had made to the Presiding Judge of the court during the examination of the application to open conciliation proceedings, that it had not been cash-flow insolvent (*en état de cessation des paiements*) for more than 45 days prior to the opening of the conciliation proceedings; whereas it also produced a certificate, issued by an audit firm, confirming this absence of cash flow insolvency;

That thus all the conditions for the opening of accelerated safeguard proceedings are met;

Whereas, Article L. 628-2 of the French Commercial Code provides that:

*"The court rules on the opening of the proceedings after a report from the conciliator on the course of the conciliation and the prospects for adoption of the draft plan by the relevant affected parties. It may obtain communication of exhibits and deeds relating to the conciliation and, where applicable, to the ad hoc mandate, notwithstanding the provisions of Article L. 611-15.*

*The opening of the proceedings is examined in the presence of the state prosecutor.";*

Whereas, Maître Perdereau and Maître Sénéchal, conciliators, gave a report in court chambers on the course of the conciliation and the prospects for adoption of the draft safeguard plan by the relevant affected parties; whereas the state prosecutor was present at the hearing; whereas the conditions laid down by this Article are therefore fulfilled;

Whereas the conciliators, the employees' representative and the state prosecutor have expressed their support for the opening of the proceedings;

The court will open accelerated safeguard proceedings with regard to CGP;

<u>Regarding the procedural bodies</u>

Whereas Maître Perdereau, conciliator, practices as a receiver, and will therefore be appointed to this position, in accordance with Article L. 628-3 of the French Commercial Code;

Whereas Maître Sénéchal, conciliator, practices as a creditors' representative, and will therefore be appointed to this position, in accordance with Article L. 628-3 of the French Commercial Code;

Whereas CGP is requesting the appointment of Maître Bourbouloux as receiver; whereas the state prosecutor is not opposed to this; whereas Maître Bourbouloux will be appointed to this position;

Whereas Rallye, Casino Group's major shareholder, was the subject of a safeguard plan approved by this court on February 20, 2020; whereas, the court considers that it is proper administration of justice that the receivers for the performance of the plan (Maître Bourbouloux and Maître Abitbol), as well as creditors' representatives in the safeguard proceedings of Rallye (Maître Leloup-Thomas and Maître Corre), be appointed as bodies of these proceedings;

That thus Maître Abitbol will be appointed as receiver;



*L*

*Initials*

That thus Maître Leloup-Thomas and Maître Corre will be appointed as creditors' representatives;

Regarding the other requests

Whereas CGP requests to be exempted from the inventory required by Article L. 622-6-1 of the French Commercial Code; whereas the court, in view of CGP's holding activity, will grant this exemption;

Whereas CGP is also requesting that the court:

- hold that the effects of the accelerated safeguard proceedings will be limited to the parties mentioned in Article L. 626-30 of the French Commercial Code directly affected by the draft plan mentioned in Article L. 628-1 paragraph 2 of the French Commercial Code and will not affect the normal performance of the Casino Group's cash pooling agreement
- reiterate the principle of the *erga omnes* effect of the forthcoming opening judgment, and in particular the prohibition on seizure of the debtor's secured assets for the creditors concerned by the accelerated safeguard proceedings, regardless of the location of said creditors
- reiterate that the Paris Commercial Court has exclusive jurisdiction, as the insolvency proceedings court, to rule on any question related to the proceedings, their consequences on CGP's rights and assets (in particular their seizure by the creditors), and any related litigation
- hold that Mr. Alexis Ravalais and Mr. David Lubek, appointed by the Board of Directors of CASINO, GUICHARD-PERRACHON, have authority to act in the United States as foreign representatives in any Chapter 15 proceedings under the Federal Bankruptcy Code in connection with CGP's accelerated safeguard proceedings, and that such foreign representatives have authority to take any measures and file any document in connection with any Chapter 15 proceedings and to take any measures they deem appropriate in this regard
- hold that CGP will file the list of creditors referred to in Article L. 628-7 of the French Commercial Code within ten days of the opening judgment;

Whereas the court will grant the above requests;

The court will rule in the following terms.

**ON THESE GROUNDS**

The court, after deliberation, ruling by judgment after due hearing of the parties and in the first instance,

Declares that it has jurisdiction;

Terminates the conciliation proceedings initiated with regard to SA CASINO, GUICHARD-PERRACHON, pursuant to an order dated May 25, 2023, as well as the mission of conciliators entrusted to SELARL THEVENOT PARTNERS, represented by Maître Aurélia Perdereau, and SCP BTSG[2], represented by Maître Marc Sénéchal;

Opens accelerated safeguard proceedings with regard to SA CASINO, GUICHARD-PERRACHON, an incorporated company having its registered office at 1 cours Antoine Guichard, Saint-Etienne (42000), registered with the Saint-Etienne Trade and Companies Register under number 554 501 171, Trading name: "CASINO" "GEANT" "PRODUITS CASINO" "PETIT CASINO STORE" "VIVAL STORE" "SPAR STORE" "ECOSERVICE STORE" "TOUT SIMPLEMENT".

PARIS COMMERCIAL COURT
JUDGMENT OF WEDNESDAY 10/25/2023
2ND CHAMBER

Case list no.: 2023059148

*L*

*Initials*

*87*
PAGE 11

Activity: Administrative and commercial activities
*Establishment(s)*
- Créteil Trade and Companies Register

Appoints Mr. Michel Teytu as bankruptcy judge;

Appoints SCP d'ADMINISTRATEURS JUDICIAIRES ABITBOL ET ROUSSELET, represented by Maître Frédéric Abitbol, 38 avenue Hoche 75008 Paris, SELARL FHBX, represented by Maître Hélène Bourbouloux, 176 avenue Charles de Gaulle 92200 Neuilly sur Seine, and SELARL THEVENOT PARTNERS, represented by Maître Aurélia Perdereau, 42 rue de Lisbonne 75008 Paris, as receivers, with a supervision mission;

Appoints SELARL FIDES, represented by Maître Bernard Corre, 105 rue de Palestro 75002 Paris, SELAFA MJA, represented by Maître Valérie Leloup-Thomas, 102 rue du Faubourg Saint Denis 75479 Paris cedex and SCP BTSG², represented by Maître Marc Sénéchal, 15 rue de l'Hôtel de Ville 92200 Neuilly sur Seine, as creditors' representatives;

Orders the formation of classes of affected parties provided for in Article L. 626-30 of the French Commercial Code;

Exempts SA CASINO, GUICHARD-PERRACHON from the inventory provided for in Article L. 622-6-1 of the French Commercial Code;

Holds that the effects of the accelerated safeguard proceedings will be limited to the parties mentioned in Article L. 626-30 of the French Commercial Code directly affected by the draft plan mentioned in Article L. 628-1 paragraph 2 of the French Commercial Code and will not affect the normal performance of the Casino Group's cash pooling agreement;

Reiterates the principle of the *erga omnes* effect of the opening judgment and in particular the prohibition on the seizure of the secured assets of SA CASINO, GUICHARD- PERRACHON for the creditors concerned by the accelerated safeguard proceedings, regardless of the location of said creditors;

Reiterates that the Paris Commercial Court has exclusive jurisdiction, as the insolvency proceedings court, to rule on any question related to the proceedings, their consequences on the rights and assets of SA CASINO, GUICHARD-PERRACHON (in particular their seizure by the creditors), and any related litigation:

Holds that Mr. Alexis Ravalais and Mr. David Lubek, appointed by the Board of Directors of SA CASINO, GUICHARD-PERRACHON, have authority to act in the United States as foreign representative in any Chapter 15 proceedings under the Federal Bankruptcy Code in connection with the accelerated safeguard proceedings of SA CASINO, GUICHARD- PERRACHON and that such foreign representatives have authority to take any measures and file any document in connection with any Chapter 15 proceedings and to take any measures they deem appropriate in connection therewith;

Holds that SA CASINO, GUICHARD-PERRACHON shall file the list of creditors referred to in Article L. 628-7 of the French Commercial Code within ten days of this judgment;



*L*                                                                                                  *Initials*

                                                                                                  *88*
                                                                                                  PAGE 12

Sets December 11, 2023, as the date for the hearing following which the draft plan or the extension of the two-month period provided for in Article L. 628-8 of the French Commercial Code shall be ruled upon;

Holds that the judgment is enforceable by operation of law;

Holds that the costs of this judgment, assessed at the sum of 121.17 euros including tax (including VAT: 17.53 euros), shall be applied to the costs of the judicial safeguard.

Upheld at the hearing in the court chambers on October 16, 2023, where Messrs. Michel Teytu, Patrick Gautier, Guillaume Simon, Pascal Gagna and Olivier Dubois sat;

Deliberated by the same judges,

Holds that this judgment is pronounced by being made available at the clerk's office of this court, the parties having been notified in advance during the proceedings in accordance with the conditions provided for in the second paragraph of Article 450 of the French Code of Civil Procedure.

The original of the judgment is signed by Mr. Michel Teytu, Presiding Judge of the deliberation, and by Mr. Laurent Cuny, clerk.


*Signature*                                              *Signature*

The clerk                                                The Presiding Judge


Certifié conforme à l'original
N° d'inscription : 24 - 1296
Écrit en langue : française
Fait le : 29/01/2024

**Exhibit B**

**Rule 1007(a)(4) Schedule of Parties**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matt Barr, Esq.
Kelly DiBlasi, Esq.

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

*In re*:

CASINO, GUICHARD-PERRACHON S.A.,
*et al.*,[1]

Debtors in foreign proceedings.

---------------------------------------------------------- x

Chapter 15

Case No. 24– _____ (      )

(Joint Administration Requested)

### RULE 1007(a)(4) OF FEDERAL RULES
### OF BANKRUPTCY PROCEDURE SCHEDULE OF PARTIES

In accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure
and as attested to in the *Declaration of Alexis Ravalais in Support of Motion for Recognition of
Foreign Main Proceedings and Certain Related Relief* (the "**Foreign Representative
Declaration**") filed contemporaneously herewith, Alexis Ravalais in his capacity as the foreign
representative (the "**Foreign Representative**") of Casino, Guichard-Perrachon S.A. ("**CGP**") and
the above-captioned debtors (collectively, the "**Debtors**"), each of which has commenced a
foreign proceeding in France (collectively, the "**Foreign Proceedings**") pursuant to the *Code de*

---

[1]   The Debtors in the foreign proceedings and each Debtor's French SIREN number are as follows:  Casino,
Guichard-Perrachon S.A. (554501171); Casino Participations France S.A.S. (812269884); Casino Finance S.A.
(538812405); Distribution Casino France S.A.S. (428268023); Monoprix S.A.S. (552018020); Quatrim S.A.S.
(833032121); and Ségisor S.A.S. (423944677).  The location of the Debtors' corporate headquarters is 1 cours
Antoine Guichard, 42000 Saint-Étienne, France, except for Monoprix S.A.S., having its corporate headquarters
located 14-16 rue Marc Bloch, 92110 Clichy, France.

Commerce (the "**French Commercial Code**") before the *Tribunal de Commerce de Paris* (Commercial Court of Paris) (the "**French Court**"), has commenced the above-captioned chapter 15 cases (these "**Chapter 15 Cases**") ancillary to the Foreign Proceedings and provides the following schedule of the names and address of the relevant persons, bodies, and parties.

I.    <u>All persons or bodies authorized to administer foreign proceedings of the Debtors:</u>

    a.    <u>*Judicial Administrators*</u>

        SELARL Thevenot Partners, acting through *Maître* Aurélia Perdereau
        42 rue de Lisbonne
        75008 Paris, France

        SELARL FHBX, acting through *Maître* Hélène Bourbouloux
        176 avenue Charles de Gaulle
        92200 Neuilly-sur-Seine, France

        SCP Abitbol & Rousselet, acting through *Maître* Frédéric Abitbol
        38 avenue Hoche
        75008 Paris, France

    b.    <u>*Creditors' Representatives*</u>

        SCP BTSG², acting through *Maître* Marc Sénéchal
        15 rue de l'Hôtel de Ville
        92200 Neuilly-sur-Seine, France

        SELAFA MJA, acting through *Maître* Valérie Leloup-Thomas
        102 rue du Faubourg Saint-Denis
        75010 Paris, France

        SELARL FIDES, acting through *Maître* Bernard Corre
        105 rue de Palestro
        75002 Paris, France

    c.    <u>*Supervisory Judge*</u>

        Michel Teytu
        1 quai de la Corse
        75004 Paris, France

II.     <u>All parties to litigation pending in the United States in which the Debtors are a party at the time of filing of this petition:</u>

As of the date of filing, none of the Debtors are a party to any pending litigation in the United States.

III.    <u>All of the entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code:</u>

The Foreign Representative is not seeking provisional relief at this time and reserves all rights to seek such relief in the future.

## **<u>Exhibit C</u>**

**Corporate Ownership Statement**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matt Barr, Esq.
Kelly DiBlasi, Esq.

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
```
*In re*:                                            :
                                                    :        **Chapter 15**
                                                    :
**CASINO, GUICHARD-PERRACHON S.A.,**                :        **Case No. 24– _____ (     )**
***et al.,[1]***                                    :
                                                    :
**Debtors in foreign proceedings.**                 :
                                                    :        **(Joint Administration Requested)**
```
-------------------------------------------------------- x
```

## CORPORATE OWNERSHIP STATEMENT PURSUANT TO
## FEDERAL RULES OF BANKRUPTCY PROCEDURE 1007(a)(4) AND 7007.1

In accordance with the requirements of Rules 1007(a)(4) and 7007.1 of the Federal

Rules of Bankruptcy Procedure, Alexis Ravalais in his capacity as the foreign representative

(the "**Foreign Representative**") of Casino, Guichard-Perrachon S.A. ("**CGP**") and the above-

captioned debtors (collectively, the "**Debtors**"), each of which has commenced a foreign

proceeding in France (collectively, the "**Foreign Proceedings**") pursuant to the *Code de*

*Commerce* (the "**French Commercial Code**") before the *Tribunal de Commerce de Paris*

---

[1]   The Debtors in the foreign proceedings and each Debtor's French SIREN number are as follows:  Casino, Guichard-Perrachon S.A. (554501171); Casino Participations France S.A.S. (812269884); Casino Finance S.A. (538812405); Distribution Casino France S.A.S. (428268023); Monoprix S.A.S. (552018020); Quatrim S.A.S. (833032121); and Ségisor  S.A.S. (423944677).  The location of the Debtors' corporate headquarters is 1 cours Antoine Guichard, 42000 Saint-Étienne, France, except for Monoprix S.A.S., having its corporate headquarters located 14-16 rue Marc Bloch, 92110 Clichy, France.

(Commercial Court of Paris) (the "**French Court**"), has commenced the above-captioned chapter 15 cases (these "**Chapter 15 Cases**") ancillary to the Foreign Proceedings and submits the following corporate ownership statement of the Debtors, identifying any corporation that directly or indirectly owns 10% or more of any class of each Debtor's equity interests:

1.      CGP, a public limited liability company organized under the laws of France and a publicly traded company in France, owns 100% of the following Debtor entities:

   a.   Distribution Casino France S.A.S., a simplified joint-stock company organized under the laws of France;

   b.   Monoprix S.A.S., a simplified joint-stock company organized under the laws of France;

   c.   Ségisor S.A.S., a simplified joint-stock company organized under the laws of France;

   d.   Casino Participations France S.A.S., a simplified joint-stock company organized under the laws of France; and

   e.   Casino Finance S.A., a private limited liability company organized under the laws of France.

2.      Casino Participations France S.A.S. owns 100% of Quatrim S.A.S., a simplified joint-stock company organized under the laws of France.

3.      At the time of commencement of these Chapter 15 Cases, Rallye S.A., F. Marc de Lacharrière (Fimalac), and Vesa Equity Investment each directly or indirectly own 10% or more of any class of CGP's equity interests.

4.      For the Court's convenience, an abbreviated corporate structure chart is provided below:



**<u>Exhibit D</u>**

**Official Form 202**

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case and this filing:</strong></td></tr>
<tr><td>Debtor Name</td><td>Casino, Guichard-Perrachon S.A.</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Southern     District of New York<br>(State)</td></tr>
<tr><td>Case number (if known):</td><td></td></tr>
</table>

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule ____*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☑ Other document that requires a declaration   Rule 1007(a)(4) Statement and Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   February 15, 2024    ✗ _____
      MM / DD / YYYY              Signature of individual signing on behalf of debtor

            Alexis Ravalais
            Printed name

            Foreign Representative
            Position or relationship to debtor